UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SKYRUNNER, LLC | CIVIL ACTION NO.: 19-CV-00049 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| LOUISIANA MOTOR VEHICLE COMMISSION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Now before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and a Request for Oral Argument filed by Defendant Louisiana Motor Vehicle Commission ("the LMVC"). [Record Document 6]. Plaintiff SkyRunner, LLC ("SkyRunner") has filed an opposition. [Record Document 10]. For the reasons discussed below, the LMVC's motion to dismiss and request for oral argument are **DENIED WITHOUT PREJUDICE** to refiling. SkyRunner is given leave to amend its complaint by **Monday, December 2, 2019.**

I. **BACKGROUND**

This case arises out of the LMVC's attempts to regulate SkyRunner. According to its first amended complaint, SkyRunner is a Louisiana Limited Liability Company that manufactures and distributes aircrafts that are certified by the Federal Aviation Administration ("FAA"). Record Document 5, ¶s 2 & 7. SkyRunner makes a product called the MK 3.2, which it describes as an FAA certified special light-sport aircraft. *Id.* at ¶ 8. SkyRunner states that the MK 3.2 is "designed to become airborne to traverse peaks, rivers, lakes, canyons, trees and cliffs, while being capable of traversing sand, dirt, snow, and asphalt." *Id.*

1

In July of 2018, the LMVC informed SkyRunner that it needed to register with the LMVC and that it needed to obtain a recreational manufacturer and dealer's license. *Id.* at ¶s 9 & 10. SkyRunner told the LMVC that it is already regulated by the FAA and that being regulated by both entities could result in inconsistency and overlapping regulations. *Id.* at ¶s 11 & 12. The LMVC responded that it "will regulate the portion of the aircraft that turns into an ATV."[1] *Id.* at ¶s 12 & 13. On November 29, 2018, the LMVC threatened to impose penalties and/or other sanctions on SkyRunner if SkyRunner did not comply with the LMVC's attempts at regulation. *Id.* at ¶ 14.

According to SkyRunner, the LMVC has no constitutional authority to regulate it because the LMVC's legal authority only allows it to regulate motor vehicles and recreational products and not aircrafts such as the MK 3.2. *Id.* at ¶s 15–21. Specifically, SkyRunner contends that the MK 3.2 does not fall within the legal definition of an ATV set forth in Louisiana Revised Statute § 32:1251. *Id.* at ¶s 15–18. SkyRunner claims that the FAA is the only entity authorized to regulate aircrafts and that, as a result, the LMVC is federally preempted from attempting to regulate SkyRunner. *Id.* at ¶ 25.

SkyRunner seeks a judgment declaring that (1) the FAA is the only entity authorized to regulate SkyRunner and the MK 3.2; (2) Louisiana Revised Statute § 32:1251, *et seq.*, is preempted by federal law; (3) any attempts by the LMVC to regulate SkyRunner and/or the MK 3.2 are preempted or not authorized by existing legislation; and (4) any attempts by the LMVC to impose fines, penalties, and/or other sanctions against SkyRunner are preempted or not authorized by existing legislation. *Id.* at pp. 8–9. SkyRunner also requests that the LMVC be required to pay all of the costs associated with these proceedings. *Id.* at 10.

---

[1] "ATV" stands for all-terrain vehicle. Record Document 5, ¶ 13.

## II. ARGUMENTS OF THE PARTIES

In response to SkyRunner's complaint, the LMVC filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Record Document 6. The LMVC claims that this lawsuit is barred by Eleventh Amendment immunity, also known as state sovereign immunity. Record Document 6-1, p. 8. The Eleventh Amendment to the Constitution prohibits federal courts from exercising jurisdiction over a non-consenting state sued by its own citizen or a citizen of any other state. *Id.* The LMVC claims that it is entitled to this immunity because it is an arm of the State of Louisiana. *Id.*

In its opposition, SkyRunner acknowledges that the Eleventh Amendment typically prevents suits against state agencies but argues that it does not apply to this case. Record Document 10, p. 3. SkyRunner asserts that the Federal Aviation Act preempts the LMVC from regulating aircrafts and that a state court should not be allowed to interpret the Act because it is federal statute. *Id.* at 3–4. Finally, SkyRunner requests that, if the Court determine that the LMVC is entitled to Eleventh Amendment immunity, it be allowed to amend its complaint in accordance with the *Ex Parte Young* doctrine and name an acting state official with the LMVC as a defendant. *Id.* at 6.

In its reply, the LMVC asserts that SkyRunner has failed to show that this Court has personal jurisdiction over it. Record Document 11, pp. 1–2. As such, the LMVC argues that it has an unqualified right to a dismissal of this case. *Id.* at 1. Finally, the LMVC claims that allowing SkyRunner to amend its complaint in accordance with the *Ex Parte Young* doctrine would only cure a deficiency of subject matter jurisdiction, not personal jurisdiction. *Id.*

## III. LAW AND ANALYSIS

### A. Legal Standard

The LMVC frames its motion as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Record Document 6, p. 1. However, the Fifth Circuit generally regards a dismissal based on state sovereign immunity as a dismissal based on a lack of subject matter jurisdiction. *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 346 n.3 (5th Cir. 2013). Accordingly, the Court will construe the instant motion as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Motions filed under Rule 12(b)(1) allow a defendant to challenge the subject matter jurisdiction of the court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the party asserting jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Ramming*, 281 F.3d at 161.

### B. Eleventh Amendment Immunity

Federal court jurisdiction is limited by the Eleventh Amendment to the Constitution, which bars suits in federal court brought by a citizen against a state, unless the state consents to suit or Congress has abrogated the states' Eleventh Amendment immunity by statute. U.S. Const. amend. XI; *Freimanis v. Sea-Land Serv., Inc.*, 654 F.2d 1155, 1157 (5th Cir. Unit A Sept. 1981); *Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). Even when a state is not named as a defendant in a federal lawsuit, "[t]he State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm'

of the State." *Vogt*, 294 F.3d at 688–89 (citing *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)). In order to determine whether Eleventh Amendment immunity bars the instant lawsuit, the Court must first determine whether the LMVC is an arm of the state that is entitled to the protections of the Eleventh Amendment.

### C. Arm of the State Factors

There is no bright-line test for determining whether an entity is an arm of the state. *Id.* at 689. The decision focuses on whether a lawsuit, "despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state." *Id.* (quoting *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998)). The Fifth Circuit considers the following six factors when making this determination:

> (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Id.* A entity does not need to meet each of these factors in order to be considered an arm of the state nor are the factors equal to one another. *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999). "[I]t is well-established that the second [factor] is the most important." *Id.* Notably, the United States District Court for the Eastern District of Louisiana has previously applied these six factors to the LMVC and found it to be an arm of the State. *Crefasi v. La. Motor Vehicle Comm'n*, No. 94-0653, 1994 WL 548205 (E.D. La. Oct. 6, 1994). The Court will examine each of the six factors in turn.

#### 1. Whether state statutes and case law characterize the LMVC as an arm of the state

Louisiana Revised Statute § 32:1251, which establishes the LMVC, states that "[t]he legislature finds and declares that the distribution and sale of motor vehicles and recreational

5

products in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare . . . ." La. Stat. Ann. § 32:1251. This statute shows that the legislature intended the LMVC to govern the sale of motor vehicles and recreational products throughout the entire state of Louisiana. Furthermore, the *Crefasi* court looked to § 32:1251 to find that the LMVC was characterized as an arm of the state. *Id.* at *2.

Furthermore, the LMVC falls within the executive branch of government. La. Stat. Ann. § 36:4.1(D)(13) (transferring the LMVC into the office of the governor). The Fifth Circuit has routinely held that a department within the executive branch qualifies as an arm of the state. *Vogt*, 294 F.3d at 692 ("In every recent case in which a Louisiana political entity has been held to be an 'arm of the state,' the state agency being sued was part of a department within the executive branch."). At least one Fifth Circuit panel has suggested that all Louisiana executive departments are arms of the state and entitled to Eleventh Amendment immunity. *Id.* (quoting *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999) (per curiam)).

Based on § 32:1251, § 36:4.1(D)(13), and the holding of *Crefasi*, the Court finds that state statutes and case law characterize the LMVC as an arm of the state. Thus, this first factor weighs in favor of immunity.

2. The source of funds for the LMVC

As stated previously, this factor is the most important in determining whether an entity is entitled to Eleventh Amendment immunity. *Hudson*, 174 F.3d at 682. This is because "one of the principal purposes of the Eleventh Amendment is to protect state treasuries." *Vogt*, 294 F.3d at 693. Although "source of funding" is a broad phrase, it actually refers to a narrower inquiry into "first and most importantly, the state's liability in the event there is a judgment against the

defendant, and second, the state liability for the defendant's general debts and obligations." *Id.* at 693 (quoting *Hudson*, 174 F.3d at 687).

The Louisiana legislature has established a special fund known as the "Self-Insurance Fund" within its Department of the Treasury. La. Stat. Ann. § 39:1533. This fund consists of all premiums paid by state agencies under the state's risk-management program and is used for, among other things, the payment of losses incurred by state agencies. *Id.* The Office of Risk Management manages all state insurance that covers property and liability exposure. *Id.* at § 1535(A). The Office is responsible for the "[n]egotiation, compromise, and settlement of all claims against the state or state agencies covered by the Self-Insurance Fund . . . ." *Id.* at § 1535(B)(6).

The LMVC is one of the state agencies covered by the Self-Insurance Fund. First, as a member of the executive branch of government, the LMVC falls within the statutory definition of a "state agency" that is covered by the Self-Insurance Fund. *Id.* at §§ 1527, 1533. Second, the Court takes judicial notice of the LMVC's Financial Statement Audit for the year ending on June 30, 2016, issued by the Louisiana Legislative Auditor. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Tu Nguyen v. Bank of Am., N.A.*, 728 F. App'x 387, 388 (5th Cir. 2018) ("Because the proposed documents are highly indisputable public records, we take judicial notice of them."). The audit states that "[l]osses of the Commission arising from judgments, claims, and similar contingencies are paid through the state's self-insurance fund operated by the Office of Risk Management, the

agency responsible for the state's risk management program, or by appropriation from the state's General Fund."[2]

According to Louisiana statutory law and the 2016 LMVC Legislative Audit, any judgment entered against the LMVC will be paid by the state. Therefore, the second factor weighs in favor of immunity.[3] *See Jacintoport Corp v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 441 (5th Cir. 1985) ("One of the most important goals of the immunity of the Eleventh Amendment is to shield states' treasuries.").

### 3. The degree of local autonomy the LMVC enjoys

Determining an agency's autonomy requires the Court to analyze (1) the extent of the entity's independent management authority and (2) the independence of the individual commissioners who govern the entity. *Vogt*, 294 F.3d at 694 (quoting *Jacintoport*, 762 F.2d at 442). As to the independence of the individual commissioners, the members of the commission are appointed by the governor and serve at the pleasure of the governor. La. Stat. Ann. §§ 32:1253(A), (B)(1). When commissioners serve at the governor's pleasure, this fact militates against a finding of local autonomy. *Jacintoport*, 762 F.2d at 442.

The independent management authority of the LMVC is also limited. Many of its main functions are governed by statute. In *Crefasi*, the court noted that the required qualifications for a dealership, the factors the LMVC must consider when deciding whether to issue a license or not,

---

[2] DARYL G. PURPERA, LOUISIANA LEGISTLATIVE AUDITOR, LOUISIANA MOTOR VEHICLE COMMISSION, A COMPONENT UNIT OF THE STATE OF LOUISIANA, FINANCIAL STATEMENT AUDIT FOR THE YEAR ENDING JUNE 30, 2016 24–25 (2016) ("2016 LMVC LEGISLATIVE AUDIT").

[3] Because the Court finds that the state is directly responsible for paying any judgment rendered against the LMVC, the Court need not determine "whether the state will indirectly fund a judgment against the [LMVC] because the state either is responsible for general debts and obligations or provides the lion's share of the [LMVC's] budget". *Vogt*, 294 F.3d at 693.

and the procedures it must follow when evaluating an application are governed by statute. 1994 WL 548205 at *2; *see* La. Stat. Ann. § 32:1254. The licensing fees that the LMVC can collect are also governed by statute. La. Stat. Ann. § 32:1255. The LMVC is authorized to deny an application for a license, revoke or suspend a license after it has been granted, or impose civil penalties, but only within the parameters set forth in the statute. *Id.* at § 1258.

The LMVC is authorized to institute injunctive actions and issue cease and desist orders. *Id.* at § 1259. In *Crefasi*, the LMVC issued an Emergency Rule regarding brokering and a cease and desist order to the plaintiff because it believed the plaintiff was acting as a motor vehicle broker in contravention of the statute. 1994 WL 548205 at *3. The legislature decided that the Rule was improper and soon after it made that finding, the Rule and the cease and desist order were rescinded. *Id.* at *3. The facts of *Crefasi* further illustrate the oversight that the legislature has over the LMVC. 1994 WL 548205 at *3.

Based on the above facts, the Court finds that the LMVC has a limited degree of autonomy and control over its own activities and therefore the third factor weighs in favor of immunity.

    4. <u>Whether the LMVC is concerned primarily with local, as opposed to statewide, problems</u>

This factor can be determined by examining the LMVC's statutory mandate. *See Jacintoport*, 762 F.2d at 443. The LMVC is empowered to regulate automobile dealerships doing business in the state of Louisiana. La. Stat. Ann. § 32:1254(A); *Crefasi*, 1994 WL 548205 at *3. The LMVC's declaration of public policy states that "the distribution and sale of motor vehicles and recreational products in the state of Louisiana vitally affects the general economy of the state . . . ." La. Stat. Ann. § 32:1251. Clearly, the LMVC is concerned with state-wide rather than local matters. Thus, the fourth factor weighs in favor of immunity.

5. Whether the LMVC has the authority to sue and be sued in its own name

Louisiana Revised Statute § 1253(H) states that "[the LMVC] may sue and be sued under the style of the commission . . . ." An entity's right to sue and be sued weighs against immunity. *Jacintoport*, 762 F.2d at 443. Because the LMVC is entitled to sue and be sued in its own name, the fifth factor weighs against immunity. *Crefasi*, 1994 WL 548205 at *3.

6. Whether the LMVC has the right to hold and use property

The LMVC is empowered to own immoveable property. La. Stat. Ann. § 32:1253(H). However, in *Crefasi*, the court found that even though all of the LMVC's property belonged to the state, this factor was of little relevance because none of the property would be used to satisfy a judgment rendered against the LMVC. 1994 WL 548205 at *3. The Court agrees. This factor is neutral as to immunity.

Overall, these factors demonstrate that the LMVC is an arm of the state. The first four factors weigh in favor of this conclusion, including the most important factor regarding how the LMVC is funded. The sixth factor is neutral and only the fifth factor weighs against finding that the LMVC is an arm of the state. The Court finds that a lawsuit against the LMVC is effectively a suit against the state of Louisiana. *Vogt*, 294 F.3d at 689. Therefore, the LMVC is an arm of the state that is entitled to sovereign immunity pursuant to the Eleventh Amendment. *Hudson*, 174 F.3d at 681.

D. **Eleventh Amendment Immunity as to the LMVC**

Now that the Court has established that the LMVC is generally entitled to Eleventh Amendment immunity, it must determine whether that immunity protects the LMVC from the instant lawsuit. Again, the Eleventh Amendment bars federal lawsuits brought by a citizen against a state, unless the state consents to suit or Congress has abrogated the states' Eleventh Amendment

immunity by statute. *Freimanis*, 654 F.2d at 1157; *Vogt*, 294 F.3d at 688. Louisiana does not consent to suit in federal court. La. Stat. Ann. § 13:5106(A); *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002). Therefore, SkyRunner can only maintain this lawsuit if Congress validly abrogated the states' Eleventh Amendment immunity through the Federal Aviation Act upon which SkyRunner bases its claims. *See* Record Document 5, ¶ 25.

The Supreme Court has established a two-part test for deciding whether Congress has properly abrogated the states' Eleventh Amendment immunity. *Ussery v. State of La. On Behalf of La. Dept. of Health and Hosps.*, 150 F.3d 431, 434 (5th Cir. 1998) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). A court must first determine whether Congress explicitly and unequivocally stated its intent to abrogate immunity in the language of the statute itself. *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243 (1985)). Then the Court must determine whether such abrogation, if present, was enacted "pursuant to a valid exercise of power." *Id.* (quoting *Seminole Tribe*, 517 U.S. at 55).

The Supreme Court has previously held that Congress had the authority to abrogate the states' sovereign immunity under only two provisions of the Constitution: § 5 of the Fourteenth Amendment and § 8, clause 3 of Article I, better known as the Commerce Clause. 517 U.S. at 59–60. In *Seminole Tribe of Florida v. Florida*, the Court reaffirmed its holding that sovereign immunity could be abrogated through legislation enacted pursuant to the Fourteenth Amendment. *Id.* at 59 & 66. However, the Court overruled its previous holding in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989) and held that sovereign immunity could not be abrogated through legislation that was enacted pursuant to the Commerce Clause. *Id.* at 72–73. Thus, § 5 of the Fourteenth Amendment is currently the only section of the Constitution under which Congress can

validly abrogate the states' sovereign immunity. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 n.2 (2011).

The LMVC argues that it is immune from the instant lawsuit because Congress enacted the Federal Aviation Act pursuant to its powers under the Commerce Clause. Record Document 6-1, p. 13. SkyRunner responds that the Eleventh Amendment normally prevents suits against state agencies but argues that "this is not the typical case" because (1) this case presents a question of federal law; (2) SkyRunner is not seeking monetary damages against the LMVC; and (3) the LMVC is "federally field preempted" from taking action against SkyRunner. Record Document 10, p. 3. SkyRunner claims that the Federal Aviation Administration has the sole authority to regulate aircrafts and aircraft manufacturers. *Id.* According to SkyRunner, this case turns upon whether the Federal Aviation Act preempts state law pursuant to the Supremacy Clause of the Constitution. *Id.* at 4. SkyRunner argues that applying Eleventh Amendment immunity in this case would be to ignore the Supremacy Clause and to allow a state court to rule on an issue over which state courts have no authority. *Id.*

SkyRunner does not substantively address the LMVC's Eleventh Amendment arguments. Instead, it conflates the concepts of federal preemption and state sovereign immunity. Its argument that the Federal Aviation Act preempts the LMVC's attempts to regulate it is premature. The Court must determine whether SkyRunner is allowed to sue the LMVC at all before it can determine whether the LMVC can regulate SkyRunner.

As established above, the LMVC is considered an arm of the state and is therefore entitled to the protections of state sovereign immunity. SkyRunner has pleaded no facts and made no arguments that contradict the LMVC's contention that this lawsuit is barred by the Eleventh Amendment. Neither has SkyRunner argued that Congress validly abrogated the states' sovereign

immunity through the Federal Aviation Act. The Court agrees with the LMVC that SkyRunner's complaint is barred by the Eleventh Amendment. However, the Court will allow SkyRunner to amend its complaint and name a proper defendant to this suit.

### E. **LEAVE TO AMEND**

SkyRunner argues that it should be allowed to amend its complaint and name an official within the LMVC as a defendant under *Ex Parte Young*. Record Document 10, p. 6. The *Ex Parte Young* exception to sovereign immunity applies when a lawsuit (1) seeks relief that is declaratory or injunctive in nature and prospective in effect and (2) is brought against individuals in their official capacities as agents of the state. *Cantu*, 535 F. App'x at 344 (quoting *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)). The complaint must also allege an ongoing violation of federal law. *Id.* (quoting *Virginia Office for Prot. & Advocacy*, 563 U.S. at 255). Under *Ex Parte Young*, a lawsuit that seeks prospective, injunctive relief from a state actor, based on an alleged ongoing constitutional violation, is not actually a suit against the state. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013)). When a state official enforces an unconstitutional law, he is "stripped of his official clothing and becomes a private citizen subject to suit." *Id.* (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)).

The facts of this case meet the requirements for the *Ex Parte Young* exception to sovereign immunity. SkyRunner requests only declaratory relief, not monetary damages.[4] Record Document 5, pp. 8–9. Furthermore, SkyRunner argues that the LMVC's attempts to regulate it represent

---

[4] Along with its claims for declaratory relief, SkyRunner requests that it be awarded all costs associated with these proceedings. Record Document 5, p. 10. This claim for costs is not barred by the Eleventh Amendment. *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Claims for fees associated with prospective relief and fees that may be awarded as costs are not barred by the Eleventh Amendment.").

ongoing violations of the Supremacy Clause of the Constitution. *Id.* at ¶ 23. Therefore, the Court **GRANTS** SkyRunner's request for leave to amend its complaint. SkyRunner will have until **Monday, December 2, 2019** to file an amended complaint naming an individual employee of the LMVC in his or her official capacity as a defendant.

IV. **CONCLUSION**

The LMVC's motion to dismiss and request for oral argument [Record Document 6] is **DENIED WITHOUT PREJUDICE** to refiling.

SkyRunner's request for leave to amend its complaint is **GRANTED**. SkyRunner is given leave to amend its complaint by **Monday, December 2, 2019**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this ___ day of October, 2019.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE