UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SKYRUNNER, LLC | CIVIL ACTION NO. 19-cv-049 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LOUISIANA MOTOR VEHICLE COMMISSION | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Now before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(2), filed by Defendants Lessie House ("House") and Ing-Ya Cattle ("Cattle"). [Record Document 32]. Plaintiff SkyRunner, LLC ("SkyRunner") has filed an opposition. [Record Document 35]. For the reasons discussed below, the motion is **DENIED**. SkyRunner is granted leave to amend its complaint by **Friday, November 6, 2020.**

**I. BACKGROUND**

This case arises out of the Louisiana Motor Vehicle Commission's ("LMVC") attempts to regulate SkyRunner. According to its second amended complaint, SkyRunner is a Louisiana business that manufactures and distributes aircrafts that are certified by the Federal Aviation Administration ("FAA"). Record Document 15, ¶s 6 & 12. SkyRunner makes a product called the MK 3.2, which it describes as an FAA certified special light-sport aircraft. *Id.* at ¶ 13. SkyRunner states that the MK 3.2 is "designed to become airborne to traverse peaks, rivers, lakes, canyons, trees and cliffs, while being capable of traversing sand, dirt, snow, and asphalt." *Id.*

In July of 2018, the LMVC informed SkyRunner that it needed to register with the LMVC and that it needed to obtain a recreational manufacturer and dealer's license. *Id.* at ¶s 14 & 15. SkyRunner explained that it was already regulated by the FAA and that being regulated by both

entities could result in inconsistency and overlapping regulations. *Id.* at ¶s 16 & 17. The LMVC responded that it "will regulate the portion of the aircraft that turns into an ATV."[1] *Id.* at ¶ 18. On November 29, 2018, the LMVC threatened to impose penalties and/or other sanctions on SkyRunner if SkyRunner did not comply with the LMVC's attempts at regulation. *Id.* at ¶ 19. This suit followed.

Initially, SkyRunner sued the LMVC seeking declaratory relief, but this Court barred the claims because of Eleventh Amendment sovereign immunity after finding the LMVC to be an arm of the State. Record Document 12, pp. 12–13. SkyRunner amended its complaint to name individual employees of the LMVC in their official capacities in accordance with the *Ex parte Young* exception to Eleventh Amendment immunity. Record Document 15, ¶ 7. SkyRunner added seventeen LMVC officials—fifteen Commissioners, Executive Director House, and Assistant Executive Director Cattle—to the suit. *Id.* The motion to dismiss pending before the Court was filed only by House and Cattle, and thus this ruling pertains solely to these two Defendants. Record Document 32.

According to SkyRunner, the LMVC has no constitutional authority to regulate the MK 3.2 because the LMVC's legal authority only allows the Commission to regulate motor vehicles and recreational products and not aircrafts such as the MK 3.2. Record Document 15, ¶s 20–26. Specifically, SkyRunner contends that the MK 3.2 does not fall within the legal definition of an ATV set forth in Louisiana Revised Statute § 32:1251. *Id.* at ¶s 20–23. SkyRunner claims that the FAA is the only entity authorized to regulate aircrafts and that, as a result, the LMVC is federally preempted from attempting to regulate SkyRunner. *Id.* at ¶ 30.

---

[1] "ATV" stands for all-terrain vehicle. Record Document 15, ¶ 18.

SkyRunner ultimately seeks a judgment declaring that (1) the FAA is the only entity authorized to regulate SkyRunner and the MK 3.2; (2) Louisiana Revised Statutes § 32:1251, *et seq.* ("LMVC laws") are preempted by federal law; (3) any attempts by the LMVC and its staff to regulate SkyRunner and/or the MK 3.2 are preempted or not authorized by existing legislation; and (4) any attempts by the LMVC and its staff to impose fines, penalties, and/or other sanctions against SkyRunner are preempted or not authorized by existing legislation. *Id.* at 11–12. SkyRunner also requests that the LMVC be required to pay "all costs associated with these proceedings." *Id.* at 13.

## II. LEGAL STANDARD

### A. Motion to Dismiss

House and Cattle frame their motion as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Record Document 32, p. 1. However, House and Cattle are claiming sovereign immunity. Record Document 36, p. 6. The Fifth Circuit generally regards a dismissal based on state sovereign immunity as a dismissal based on a lack of subject matter jurisdiction. *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 346 n.3 (5th Cir. 2013). Further, previously in this matter, this Court construed a motion to dismiss based on sovereign immunity as a dismissal pursuant to Rule 12(b)(1). Record Document 12, p. 4. Accordingly, the Court will construe the instant motion as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Motions filed under Rule 12(b)(1) allow a defendant to challenge the subject matter jurisdiction of the court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local*

*6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the party asserting jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Ramming*, 281 F.3d at 161. Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010).

### B. Eleventh Amendment Immunity and Ex parte Young Exception

Federal court jurisdiction is limited by the Eleventh Amendment to the Constitution, which bars suits in federal court brought by a citizen against a state, unless the state consents to suit or Congress has abrogated the Eleventh Amendment immunity by statute. U.S. Const. amend. XI; *Freimanis v. Sea-Land Serv., Inc.*, 654 F.2d 1155, 1157 (5th Cir. Unit A Sept. 1981); *Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). Even when a state is not named as a defendant in a federal lawsuit, "[t]he State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt*, 294 F.3d at 688–89 (citing *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)). As an arm of the State, the LMVC is entitled to the protections of the Eleventh Amendment.[2]

Sovereign immunity additionally bars "suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (internal citations omitted). However, the Supreme Court has found a narrow exception to Eleventh Amendment immunity under *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception

---

[2] This Court has previously ruled that the LMVC is an arm of the State and is entitled to Eleventh Amendment immunity because the State has not consented to suit in federal court and Congress has not abrogated the immunity in this context. Record Document 12.

"is a legal fiction that allows private parties to bring suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997 (internal quotation marks and citation omitted). The Supreme Court's jurisprudence directs the Court to conduct two inquires. *Id.* at 998. First, the Court must conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 998 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Next, the Court must determine if "the official in question has a sufficient connection to the enforcement of the challenged act." *Id.* (citing *Ex parte Young*, 209 U.S. at 157).

### III. ANALYSIS

House is the Executive Director of the LMVC, and Cattle is the Assistant Executive Director of the LMVC. Record Document 32, p. 2. Neither is a Commissioner. *Id.* House and Cattle argue that they are not proper parties to the suit because the Commissioners are the "state officials by virtue of their office" and thus the only proper parties under *Ex parte Young* as it relates to enforcing the LMVC laws. Record Document 36, pp. 2–3. House and Cattle further claim that they are merely employees of the LMVC and that the Commissioners have final authority over enforcement of the LMVC laws. *Id.* at 4–6. SkyRunner, however, contends that the Executive Director and Assistant Executive Director do have legal authority to enforce the regulations of the LMVC and that the law only requires "a scintilla of enforcement" power for a party to be subject to the *Ex parte Young* exception. Record Document 35, pp. 5–8. Finally, SkyRunner alternatively requests leave of court to amend its complaint to allege sufficient facts against House and Cattle, if this Court finds its second amended complaint to be insufficient. *Id.* at 8.

A. <u>**Whether the Ex parte Young Exception Applies to House and Cattle**</u>

As discussed above, the Court must undertake a two-part analysis in deciding if the exception applies to the state official in question. Initially, the Court briefly considers "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Austin*, 943 F.3d at 998 (quoting *Verizon*, 535 U.S. at 645). This is known as the *Verizon* standard. Here, SkyRunner satisfies that standard, as it claims that the FAA preempts the LMVC laws, and it seeks a declaration holding as such. Record Document 15, p. 12**.** SkyRunner additionally requests a declaration that the LMVC cannot force it to obtain a license, nor can the LMVC impose a fine because of said federal preemption. *Id.* It is settled in the Fifth Circuit "that an allegation in a plaintiff's complaint of federal preemption of the law at issue satisfies the *Verizon* standard for the purposes of the *Young* exception." *City of Austin*, 943 F.3d at 999 (citing *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)). The parties do not dispute this point and instead dedicate most of their briefs to arguing over whether House and Cattle have a "sufficient connection to the enforcement of the challenged act." *Id.* at 998 (internal quotation marks and citations omitted).

The Fifth Circuit has recognized that what is a "sufficient connection to enforcement is not clear from [its] jurisprudence." *Id.* at 999. Different panels of the Fifth Circuit have used different definitions of "connection." *See id.* An *en banc* plurality in *Okpalobi v. Foster* held that the state official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Okpalobi*, 244 F.3d 405, 416 (5th Cir. 2001). Further describing the *Okpalobi* definition, the Fifth Circuit explained the state official must be "specially charged with the duty to enforce the statute and be threatening to exercise that duty." *Id.* at 414–15.

However, other panels in the Fifth Circuit have expressly refused to follow *Okpalobi* because it was a plurality decision; those courts have required only "*some* connection with enforcement." *Bailey v. Bd. of Comm'rs of La. Stadium and Exposition Dist.*, 441 F. Supp. 3d 321, 336 (E.D. La. 2020) (citing *Air Evac*, 851 F.3d at 518; *K.P. v. LeBlanc*, 627 F.3d 115, 120–25 (5th Cir. 2010)); *but see Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting approvingly *Okpalobi*, 244 F.3d at 416 (plurality)).

Recently, in *City of Austin*, the Fifth Circuit refused to opine on the proper connection standard because the official in question did not meet either standard. 943 F.3d at 1000 (stating "we need not define the outer bounds of this circuit's *Ex parte Young* analysis"). The *City of Austin* court held that the case law at least "requires some scintilla of enforcement by the relevant state official with respect to the challenged law." *Id.* at 1002. Here, SkyRunner may show this enforcement by "point[ing] to specific enforcement actions of the respective defendant state officials warranting the application of the *Young* exception." *Id.* at 1001 (describing generally *K.P.*, 627 F.3d 115, and *Air Evac*, 851 F.3d 507). The *City of Austin* "defined enforcement as typically involving compulsion or constraint." *Id.* at 1000 (internal quotation marks and citations omitted).

### a. **Executive Director House**

Based on her active enforcement role, this Court holds that House has the requisite connection under *Ex parte Young* such that she is a proper party to this case. The Court finds that it "need not resolve whether *Ex [p]arte Young* requires only 'some connection' or a 'special relationship' between the state actor and the challenged statute" because House satisfies either standard. *K.P.*, 627 F.3d at 124. House is clearly "delegated some enforcement authority . . . [and has taken] an active role in enforcing" the LMVC laws. *Id.* at 125. House met and communicated

with SkyRunner to discuss the need for obtaining a license with the LMVC. Record Document 35-1, pp. 1–4. Further, House appears to have played a large role in the decision to require SkyRunner to obtain a license from the LMVC. Record Document 35-2, p. 1. The parties do not dispute the veracity of an email from an LMVC employee, which stated "[a]fter re-review with my Executive Director [House], it was determined that you will [be] require[d] to obtain a recreational manufacturer and dealers license." *Id.* This email makes clear that House had at least some power in the decision to regulate SkyRunner and a duty to see the LMVC laws enforced. The fact that House "serve[s] at the pleasure of the [LMVC]"[3] does not change the fact that she has been delegated authority to compel manufacturers, such as SkyRunner, to obtain a license from the LMVC. Ultimately, House has taken an active role in the enforcement of the LMVC laws. *See K.P.*, 627 F.3d at 125. Therefore, House has the requisite connection to enforcement and is properly before the Court under *Ex parte Young*.

The Court is unpersuaded by House's attempt to limit the LMVC's enforcement power to only the Commissioners. House provides no jurisprudential support for this assertion aside from one standalone quote from the *City of Austin*: "[w]here a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends." *City of Austin*, 943 F.3d at 998; *see In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) ("If the official sued is not statutorily tasked with enforcing the challenged law, then the requisite connection is absent and our *Young* analysis ends.") (internal quotation marks and citations omitted). However, House's reliance on this quote is misguided because it has no bearing on the present case as shown below.

---

[3] La. R.S. § 32:1253(D) ("The commission shall appoint a qualified person to serve as executive director thereof, to serve at the pleasure of the commission.")

First, the above quote embodies the holding in *Morris v. Livingston*, which is factually inapposite to this case. *See City of Austin*, 943 F.3d at 998 (citing *Morris*, 739 F.3d at 746, for above quote); *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998, and citing *Morris*, 739 F.3d at 746, for above quote). In *Morris*, the Fifth Circuit dismissed the Governor of Texas from a suit brought by an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ"). 739 F.3d at 745–46. The *Morris* court held that the Executive Director of the TDCJ was a proper defendant because the TDCJ was the agency responsible for the administration and enforcement of the challenged law, not the Governor. *Id.* The court found that the Governor had no connection to the challenged law, except a general duty to see the law enforced. *See id.*

Unlike *Morris* where the Governor was only indirectly related to enforcement by being the chief executive of the state, the named Defendants in the present matter are all a part of the LMVC, and at least the Commissioners and House are directly responsible for its enforcement. Whereas the Governor in *Morris* did not play an active role in the enforcement of the challenged law, House, on the other hand, has played an active role in enforcing the LMVC laws through her actions discussed above. *See K.P.*, 627 F.3d at 125.

Second, the parties do not dispute that the LMVC is the agency directly responsible for enforcement of the challenged laws, similar to the TDCJ in *Morris*. *See Morris*, 739 F.3d at 746. The relevant Louisiana statute provides the LMVC with broad authority to enforce the LMVC laws:

> The [LMVC] is hereby vested with the powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objects of this Chapter, and is hereby authorized and empowered to make and enforce all reasonable rules and regulations and to adopt and prescribe all forms necessary to accomplish said purpose, and the enumeration of any power or authority herein shall not be construed to deny, impair, disparage, or limit any others necessary to the attainment thereof.

La. R.S. § 32:1253(E). House argues that this section strictly limits the enforcement power of the LMVC to the Commissioners. Record Document 32-1, p. 9–10. To the contrary, this Court finds that this section grants broad authority to the LMVC as a whole to enforce its laws, which includes delegating enforcement power to different personnel, such as Executive Director House.[4] Ultimately, House misconstrues *Ex parte Young* and its progeny in trying to characterize the Commissioners as the only "state official[s] by virtue of [their] office" who are charged with the enforcement of the LMVC laws. Record Document 36, pp. 3–6. Indeed, the Supreme Court in *Ex parte Young* also stated that

> [t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.[5]

*Ex parte Young*, 209 U.S. at 157. Accordingly, the Court is satisfied that it has jurisdiction over House pursuant to *Ex parte Young* because of her active enforcement role as discussed above.

---

[4] The Court's reading of the statute is buttressed when comparing Louisiana Revised Statute § 32:1253(E) with § 32:1253(D). Section 32:1253(D) provides as follows:
> The commission shall appoint a qualified person to serve as executive director thereof, to serve at the pleasure of the commission and shall fix his salary and shall define and prescribe his duties. The executive director shall be in charge of the commission's office and shall devote such time to the duties thereof, as may be necessary. Said commission may employ such clerical and professional help and incur such expenses as may be necessary for the proper discharge of its duties under this Chapter.

La. R.S. § 32:1253(D). When examining the provisions together, it is clear to the Court that the Louisiana legislators contemplated more than just the Commissioners as those responsible for the enforcement of the LMVC laws. Section 32:1253(E) grants broad power to the LMVC in enforcing the statute, which includes delegating power to an executive director and "professional help . . . [that] . . . may be necessary for the proper discharge of [the LMVC's] duties." *Id.*

[5] *See City of Austin*, 943 F.3d at 997–98 ("The text of the challenged law need not actually state the official's duty to enforce it, although such a statement may make that duty clearer.") (citing *Ex parte Young*)).

b. **Assistant Executive Director Cattle**

However, the record is not as clear as to Cattle, who is the Assistant Executive Director of the LMVC. The complaint does not point to specific enforcement actions in which Cattle may have engaged. *See City of Austin*, 943 F.3d at 1001. Additionally, SkyRunner's supplemental evidence does not sufficiently show that Cattle has some connection to enforcement. The facts at this stage only show that Cattle attended a meeting with SkyRunner and was one of two LMVC personnel—House being the other—authorized to speak to SkyRunner once litigation commenced. Record Documents 35-1, p. 1; 35-3, p. 1. Fifth Circuit jurisprudence requires at least "some scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin*, 943 F.3d at 1002. The undisputed facts do not show that Cattle engaged in compulsion or constraint regarding the regulation of SkyRunner. *See id.* Therefore, the Court finds that the facts are insufficient to subject Cattle to this Court's jurisdiction under *Ex parte Young* at this juncture.

B. **Leave to Amend**

In the event this Court finds that it does not have jurisdiction over House and/or Cattle, SkyRunner has requested leave to amend its complaint to allege sufficient facts demonstrating this Court's proper exercise of jurisdiction.[6] Record Document 35, p. 8. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although a court may dismiss [a] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199

---

[6] The Court has only found an insufficiency in pleading as it relates to Cattle. As discussed above, the Court finds the complaint and undisputed facts are sufficient to subject House to the jurisdiction of this Court.

F.3d 239, 247 n.6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675–76 (2d Cir 1991)).

Here, the issue is factual in nature. Cattle may be subject to the jurisdiction of this Court under *Ex parte Young* if SkyRunner can "point[] to specific enforcement actions of [Cattle] warranting the application of the *Young* exception." *City of Austin*, 943 F.3d at 1001 (internal citations omitted). Therefore, this Court finds that it is in the interest of justice to allow SkyRunner an opportunity to amend its complaint.

## IV. CONCLUSION

For the forgoing reasons, the motion to dismiss filed by Defendants House and Cattle is **DENIED**. SkyRunner's request for leave to amend its complaint is **GRANTED**. SkyRunner is granted leave to amend its complaint by **Friday, November 6, 2020.** Cattle may file a motion to dismiss based upon SkyRunner's amended complaint.

**THUS DONE AND SIGNED** this 15th day of October, 2020.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE