## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| SKYRUNNER, LLC | CIVIL ACTION NO. 19-49 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LOUISIANA MOTOR VEHICLE COMMISSION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff SkyRunner, LLC ("SkyRunner") [Record Document 106] and Defendants Louisiana Motor Vehicle Commissioners Allen Krake, V. Price Leblanc, Jr., Gregory Lala, Eric Lane, Stephen Guidry, Jr., Kenneth Smith, Keith Hightower, Keith Marcotte, Wesley Scoggin, Joseph Westbrook, Donna Corley, Terryl Fontenot, Raney Raymond, and Maurice Guidry; and Executive Director of the Louisiana Motor Vehicle Commission ("LMVC") Lessie House (collectively, "Defendants") [Record Document 104]. The motions have been fully briefed. For the reasons below, the foregoing motions are **DENIED**.

I.    **Background**

The Court provided a detailed factual background section in its first memorandum ruling, *see* Record Document 39 at 1-3, which it will recount below.

SkyRunner is a Louisiana Limited Liability Company that manufactures and distributes a product called the MK 3.2. Record Document 40 at ¶ 11. SkyRunner describes the MK 3.2 as a "[Federal Aviation Administration] certified special light-sport aircraft (S-LSA) . . . . designed to become airborne to traverse peaks, rivers, lakes, canyons, trees and

1

cliffs, while being capable of traversing sand, dirt, snow, and asphalt." *Id.* Plaintiff claims that the "greatest use of the MK 3.2 is for commercial or government purposes, with virtually no recreational sales." Record Document 106-1 at 4.

Plaintiff alleges that in July 2018, the LMVC informed it that it would need to register and obtain recreational manufacturer's and dealer's licenses. Record Document 40 at ¶¶ 12-13. SkyRunner claims that by that time, the Federal Aviation Administration ("FAA") had begun regulating the MK 3.2. *Id.* at ¶ 14. Plaintiff represents that it sent the LMVC an inquiry about the LMVC's intent in regulating the MK 3.2 and articulated its concern regarding regulatory overlap. *Id.* at ¶ 15. SkyRunner alleges that a representative from the LMVC responded that it intended to "regulate the portion of the aircraft that turns into an ATV."[1] *Id.* at ¶ 16. On November 29, 2018, Plaintiffs allege that the LMVC threatened to impose penalties and/or other sanctions on SkyRunner if it did not comply with the LMVC's directives. *Id.* at ¶ 17. This suit followed.

According to SkyRunner, the LMVC does not have constitutional authority to regulate the MK 3.2 because the LMVC's legal authority only allows it to regulate motor vehicles and recreational products, not aircrafts like the MK 3.2. *Id.* at ¶¶ 19-26. Specifically, SkyRunner contends that the MK 3.2 does not fall within the legal definition of an ATV set forth in Louisiana Revised Statute § 32:1252(1). *Id.* at ¶¶ 19-21. SkyRunner claims that the LMVC is federally preempted from regulating the MK 3.2 because the FAA is the only entity authorized to regulate aircrafts. *Id.* at ¶¶ 27-30.

---

[1] "ATV" stands for all-terrain vehicle.

2

SkyRunner seeks a judgment declaring that: (1) the FAA is the only entity authorized to regulate the MK 3.2; (2) Louisiana Revised Statutes § 32:1251, *et seq.* are preempted by federal law; (3) any attempts by the LMVC and its staff to regulate the MK 3.2 are preempted or not authorized by existing legislation; and (4) any attempts by the LMVC and its staff to impose fines, penalties, and/or other sanctions against SkyRunner are preempted or not authorized by existing legislation. *Id.* at 11-12. SkyRunner also requests that the LMVC be required to pay "all costs associated with these proceedings." *Id.* at 12.

Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), Record Document 81 at 1, which Plaintiff opposed, Record Document 89. On March 23, 2022, the Court held oral argument on Defendants' motion. *See* Record Document 99. Defendants argued that Plaintiff failed to plead facts to support its assertions that field and conflict preemption prohibit the LMVC's regulation of the MK 3.2. *See* Record Document 81-1 at 6-7. During that motion hearing, the Court asked a series of factual and legal questions to which the parties were unable to respond. Record Document 99 at 2. After further discussion, the Court found that the parties failed to present "the legal disputes fully enough such that the Court [was able to] properly resolve the motion." *Id.* As a result, the Court denied Defendants' motion to dismiss without prejudice and with the right to re-urge the issues in cross-motions for summary judgment. Record Document 99 at 1. These cross-motions followed.

## II.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."

4

*Tidewater Inc. v. United States*, 565 F.3d 299, 302 (5th Cir. 2009) (citing *Ford Motor Co.*

*v. Tex. Dep't of Transp.*, 264 F.3d 493, 499 (5th Cir. 2001)).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts

as to which it "contends there is no genuine issue to be tried." The opposing party must then

set forth a "short and concise statement of the material facts as to which there exists a

genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's

statement "will be deemed admitted, for purposes of the motion, unless controverted as

required by this rule." *Id.*

## III.   Law & Analysis

### a.  Can the LMVC Regulate the MK 3.2?

The Court cannot turn to the issue of federal preemption until it determines whether

the MK 3.2 is an ATV under Louisiana Revised Statute § 32:1252(1). SkyRunner contends

that the MK 3.2 is an aircraft that has "common qualities" with ATVs. Record Document

106-1 at 5. Defendants argue that the MK 3.2's capabilities and features make it an ATV.

Record Document 104-2 at 5. The Court will first provide important contextual information

regarding the regulatory authority of the LMVC and the definition of an ATV under

Louisiana Revised Statute § 32:1252(1) before turning to the issue of whether the MK 3.2

is an ATV.

### i.  Regulatory Authority of the LMVC

The Louisiana Motor Vehicles Act ("LMVA") created the LMVC to oversee the

distribution and sale of motor vehicles and recreational products. *See* La. R.S. § 32:1251, *et*

*seq.* The LMVA "requires recreational products manufacturers and dealers to be licensed

before they engage in business" in Louisiana. *Elio Motors, Inc. v. Louisiana Motor Vehicle Comm'n*, No. 18-CA-545 (La. App. 5 Cir. 3/27/19); 268 So. 3d 1132, 1154, *writ denied*, 2019-C-0656 (La. 6/17/19); 274 So. 3d 572. "[T]he purpose of the licensing law is to protect the public from physical and financial harm, including frauds, impositions, and other abuses, by providing administrative oversight of those who engage in activities covered by the law." *Id.*

The LMVA grants the LMVC broad enforcement authority over the licensing of manufacturers and dealers of recreational products, such as ATVs. *See* La. R.S. §§ 32:1251; 1252(1), (45), (46); 1253(E); and 1254(A)(1), (18). The LMVA defines a "dealer" as "any person licensed to sell a motor vehicle, specialty vehicle, or recreational product subject to regulation by this Chapter." La. R.S. § 32:1252(9). It defines a "manufacturer" as "any person, resident or nonresident, who fabricates, manufactures, or assembles motor vehicles, recreational products . . . ." La. R.S. § 32:1252(24). Recreational products include ATVs. La. R.S. § 32:1252(45). Louisiana Revised Statute § 32:1252(1) defines an ATV as:

> [A]ny vehicle manufactured for off-road use and issued a manufacturer's statement or certificate of origin, as required by the commission, that cannot be issued a registration certificate and license to operate on the public roads of this state because, at the time of manufacture, the vehicle does not meet the safety requirements prescribed by R.S. 32:1301 through 1310. This includes vehicles that are issued a title by the Department of Public Safety and Corrections, public safety services, such as recreational and sports vehicles, but it shall not include off-road vehicles used for farm purposes, farm equipment, electric-assisted bicycles, or heavy construction equipment.

La. R.S. § 32:1252(1).

In other words, to be classified as an ATV under the statute, a vehicle must: 1) be manufactured for off-road use; 2) be issued a manufacturer's statement or certificate of

origin ("MS/MCO"); and 3) not be issued a registration certificate and license to be operated on public roads. In its motion for summary judgment, Defendants address all three components. *See* Record Document 104-2 at 6-12. Plaintiff only addresses the question of whether it issues an MS/MCO. *See* Record Documents 106-1 at 5-7 and 110 at 3-4. Because this is the only component that both parties address in their briefs, the Court will begin its inquiry with whether SkyRunner issues an MS/MCO.

ii.   Does SkyRunner Issue an MS/MCO?

Plaintiff contends that the MK 3.2 is not an ATV because it does not issue an MS/MCO as required by Louisiana Revised Statute § 32:1252(1). *See* Record Document 106-1 at 5. Defendants argue that SkyRunner has already issued an MS/MCO to the FAA. Record Document 104-2 at 9. After reviewing the briefing on the motions for summary judgment, the Court finds that neither party has adequately briefed this issue for the reasons it will articulate below.

Under a state regulation promulgated by the LMVC, "[a]n application for a license as a vehicle manufacturer . . . required by R.S. 32:1254 must be accompanied by a manufacturer's statement/certificate of origin (MSO/MCO)." La. Admin. Code tit. 46, § 1901(A) (2013).[2] An MS/MCO must contain "at least" the following:

> (1) first conveyance of the vehicle after its manufacture; (2) the model year; (3) make; (4) model, body style; (5) vehicle identification number or serial number if all terrain (ATV) or off-road (ORV) vehicle; (6) an indication that the vehicle was not manufactured for road use, if applicable; (7) shipping weight or curb weight; and (8) the manufacturer's name and address.

---

[2] This regulation was promulgated by the LMVC through the power vested in it by the legislature. *See* La. R.S. § 32:1253(E).

*Id.*

The Court will first address Plaintiff's motion for summary judgment. Plaintiff devoted only about a page to this topic. *See* Record Document 106-1 at 5-7. The extent of Plaintiff's argument is that:

> Under Louisiana motor vehicle laws, the term "recreational products" includes "all-terrain vehicles." La. R.S. 32:1252(45). The term "manufacturer" includes anyone who manufactures "recreational products." La. R.S. 32:1252(24). Each "manufacturer" must obtain a license from the Louisiana Motor Vehicle Commission to operate in the state. La. R.S. 32:1254(A). So, if the SkyRunner MK 3.2 is an "all-terrain vehicle" under Louisiana state law, then those laws also require SkyRunner to get a license from the Commission. If the MK 3.2 does not fit the definition of an "all-terrain vehicle," SkyRunner need not obtain a license.
>
> "An 'all-terrain vehicle' shall mean any vehicle manufactured for off-road use *and issued a manufacturer's statement or certificate of origin*, as required by the commission, that cannot be issued a registration certificate and license to operate on the public roads of this state because, at the time of manufacture, the vehicle does not meet the safety requirements prescribed by R.S. 32:1301 through 13107...." La. R.S. 32:1252(1). (Emphasis added.) This definition is so broad it would apply to all aircraft *if aircraft had to submit to the state motor vehicle registration scheme* (which requires a manufacturer's statement/certificate of origin).
>
> Louisiana's Vehicle Certificate of Title Law (La. R.S. 32:701, *et seq.*) requires that vehicle manufacturers create a manufacturer's statement/certificate of origin for each vehicle. The term "manufacturer's certificate" is defined as:
>> a certificate on a form to be prescribed by the commissioner, and furnished by the manufacturer, showing the original transfer of a new vehicle from the manufacturer to the original purchaser, and each subsequent transfer between distributor and dealer, dealer and dealer, and dealer to owner, through and including the transfer to the title applicant.
>
> La. R.S. 32:702(10)
>
> State law regulates the size, type of paper, and security features for those certificates, as well as the contents of the certificate. *See* 46 La. Admin. Code Pt V §1901. The manufacturer's statement or certificate of origin ("MSO/MCO") is the first document required in registering a vehicle with the

state to obtain a title certificate under state law. SkyRunner does not issue an MSO/MCO with the MK 3.2.

*Id.* Plaintiff's opposition to Defendants' motion for summary judgment is similarly barebones. Plaintiff's opposition states:

> Manufacturers of new vehicles create a "manufacturer's statement of origin" or "manufacturer's certificate of origin" as the first document required to transfer title of a new vehicle under the law of most states in their respective vehicle registration schemes. The two terms are interchangeable and often abbreviated as "MSO/MCO." The American Association of Motor Vehicle Administrators provides general information about MSO/MCO's on its website.[3]
>
> Defendants admit SkyRunner's MK 3.2 could only be an "all-terrain vehicle" under state law if it was issued an MSO/MCO and plaintiff agrees. Defendants claim SkyRunner issues a "manufacturer's certificate of origin" for the MK 3.2. It does not. An example of the document defendant claims is a "manufacturer's certificate of origin" is attached to defendants' motion as Exhibit 3. That document is an Affidavit of Ownership, Light-Sport Aircraft Manufacturer's Affidavit and is required by the FAA as the first document in the (federal) registration scheme for light- sport aircraft. The FAA designates this as Form "AC 8050-88A[.]"

Record Document 110 at 3-4. These two sections are comprised entirely of copy-and-paste recitations of state laws and regulations followed by unsupported, conclusory statements. The sections are devoid of any evidence, legal argument, or analysis. As such, the Court is unable to glean the relevance or applicability of these statutes and regulations to the issue before it, or how Plaintiff derived its conclusions from these statutes and regulations.

---

[3] To be clear, it is not the Court's responsibility to independently review and synthesize information posted on websites without any argument or analysis by Plaintiff. Plaintiff should have cited to or referenced any relevant information found on the American Association of Motor Vehicle's website that it believed would support its argument or provide the Court with additional information to assist it in its ruling.

Defendants' motion for summary judgment suffers from similar deficiencies.

Defendants' argument is that:

> Defendant requires that an applicant for a manufacturer's license provide a sample Manufacturer's Certificate of Origin ("MCO") with its license application. This requirement is rooted in Louisiana Administrative Code ("La AC") Rule 101 and La AC Rule 1901. Rule 101 defines a MCO as a transitional ownership document from the manufacturer to convey ownership of its product to a dealer. Rule 1901 provides that an applicant submit a copy of MCO with its application for a manufacturer's license. Finally, Plaintiff already issues a document satisfying Rule 1901 and Rule 101. In response to Defendant's Request for Production of Documents, Plaintiff has already provided a copy of an Affidavit of Ownership to the FAA in which Plaintiff attested to the fact that it is the manufacturer of the MK3.2, and that it is the owner of the MK3.2. There is no genuine dispute to the fact that Plaintiff already issues a MCO to the FAA.

Record Document 104-2 at 8-9. Defendants contend that Plaintiff issues an MS/MCO to the FAA but do not provide any argument or analysis in support of this assertion. First, Defendants do not enunciate how the form that Plaintiff submits to the FAA satisfies Rules 101 and 1901 of the Louisiana Administrative Code. Even if they were able to show that it contained all the requisite information, Defendants fail to articulate whether the information is presented in an acceptable format. In other words, does the regulation permit SkyRunner to submit its Affidavit of Ownership as its MS/MCO, or is there a certain form or document with that information that must be filed with the LMVC? Additionally, Defendants failed to submit a sample MS/MCO. Without a sample MS/MCO, the Court has nothing with which it can compare the Affidavit of Ownership submitted to the FAA.

Defendants raise a different argument in their opposition to Plaintiff's motion for summary judgment. In their opposition, Defendants contend that there are "genuine disputes of fact" regarding whether the statutory definition actually requires that an MS/MCO be

issued for a vehicle to be considered an ATV. Record Document 111 at 6. Defendants argue that the statutory definition of "ATV" is circular "whereby the legislature requires the manufacturer of an all-terrain vehicle obtain a manufacturer's license, but allows the manufacturer to evade licensing at its whim by simply refusing to issue an MCO." *Id.* at 9.

The Court highlighted this circular reasoning during the hearing on Defendants' motion to dismiss. Record Document 99 at 2. At the time, Plaintiff "urged that such circularity should weigh in its favor." *Id.* Defendants now contend that the circularity of the statute should rule in their favor, arguing that the issuance of an MS/MCO should be viewed as a "requirement that a manufacturer issue an MCO for the recreational product it manufactures rather than being a definitional element of [ATV]." Record Document 111 at 9. Defendants argue that this would "harmonize" law and public policy, *see id.*, but they fail to enunciate or explain how or why. Moreover, Defendants advance these conclusions about the interpretation and construction of Louisiana Revised Statute § 32:1252(1) without engaging in any of the typical canons of construction required to support their claims. For example, Defendants aver that the purpose of Louisiana Revised Statute § 32:1252(1) is to "define an all-terrain vehicle, thus identifying a manufacturer who is required to obtain a manufacturer's license from the LMVC," but they do not cite to any legislative history or other authority in support of this assertion. In short, Defendants contend that Louisiana Revised Statute § 32:1252(1) should not be read as requiring the issuance of an MS/MCO, but are unable to support this assertion with any evidence, supporting legal authority, or analysis.

11

The Court finds that the parties have failed to brief this issue adequately and sufficiently. First, the Court continues to have questions regarding the statutory definition of "ATV" and the requirement that a manufacturer issue an MS/MCO. Surely, the Louisiana State Legislature would not have included the provision of an MS/MCO in the statutory definition if it was not of some import. Second, the Court seeks clarity on the information that an MS/MCO is required to contain, especially the information regarding "first conveyance of the vehicle after its manufacture." La. Admin. Code tit. 46, § 1901(A) (2013). If the purpose of the MS/MCO is simply to identify the manufacturer of an ATV, then the Court wonders why this information would be required. Is the MS/MCO a title document? Third, the Court asks whether there are any required formatting or other requirements for an MS/MCO and whether a document filed with the FAA may constitute or comply with an MS/MCO. The Court notes that these questions were already asked during the previous motion hearing; unfortunately, the parties have still been unable to provide the Court the answers it seeks.

The Court cannot rule on the issue of federal preemption without first determining whether the MK 3.2 is an ATV. The Court still believes that these legal issues can be resolved without a need for trial. However, the Court cannot rule on the legal issues before it without first determining that there are no genuine disputes of fact. The parties have failed to carry their burden in proving that none exist. In short, the Court is unable to rule on the preemption issues because neither party was able to meet its burden at summary judgment regarding whether the MK 3.2 is an ATV. Accordingly, the parties' cross-motions for summary judgment must be denied.

IV.    **Conclusion**

For the foregoing reasons, the parties' cross-motions for summary judgment [Record Documents 104 and 106] are **DENIED**. In lieu of permitting the parties another chance to brief these issues for a third time, a status conference before this Court has been **SET** for **Wednesday, November 1, 2023, at 10:30 a.m.** via Zoom videoconference. The Court will email the Zoom information to all counsel of record. The purpose of this status conference will be to address with the parties how to best resolve these outstanding issues.

**THUS DONE AND SIGNED** this 29th day of September, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE